**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CARLOS F. RAMOS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security )<br>)<br>Defendant. ) | CASE NO.   1:10-cv-940<br><br>JUDGE BENITA Y. PEARSON<br><br>MAGISTRATE JUDGE GREG WHITE<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Carlos F. Ramos ("Ramos") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On May 15, 2006, Ramos filed an application for POD, DIB, and SSI alleging a disability onset date of April 17, 2006. His application was denied both initially and upon reconsideration. Ramos timely requested an administrative hearing.

On April 11, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Ramos, represented by counsel, testified. Barbara E. Burk testified as an impartial vocational expert ("VE"). On May 27, 2008, the ALJ found Ramos was able to perform a significant

number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age thirty-two at the time of his administrative hearing, Ramos is a "younger" person under social security regulations.  *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c).  Ramos has a high school education and past relevant work as a truck driver and working with plastic.  (Tr. 26.)

*Relevant Medical Evidence*[1]

On January 8, 2006, Ramos underwent a sleep study revealing extremely severe obstructive sleep apnea.  (Tr. 348.)  It was noted that continuous positive airway pressure (CPAP) appeared to improve his sleep apnea and oxygen saturation.  *Id*.

On May 10, 2006, Ramos experienced a syncopal episode.  (Tr. 253-268).  Ramos tested positive for cocaine (Tr. 267), despite denying any cocaine use for two months.  (Tr. 258.)  He also tested negative for opiates, despite his having filled several prescriptions for OxyContin, an opioid medication used to treat moderate to severe pain.  (Tr. 266.)  Dr. Kathrin Nicolacakis opined that Ramos was not taking the medication himself.  *Id*.  Ramos told Dr. Nicolacakis that he had not been compliant with his CPAP.  (Tr. 266-67.)  Ramos's wife confirmed his non-compliance with using his CPAP and with taking his blood pressure medications.  *Id*.  Upon

---

[1] Ramos also cites medical records that post-date the ALJ's decision by more than six months.  As the ALJ could not have considered these documents, they are not relevant for the purposes of this decision.  A court can remand a case for consideration of evidence that post-dates the ALJ's decision only where there is a showing that the evidence is new and material and there is good cause for the failure to include it in the prior proceeding.  *See* 42 U.S.C. § 405(g); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Evidence is considered new if it was "not in existence or available to the claimant at the time of the administrative hearing." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  Ramos, however, has not made such an argument.  Moreover, in this circuit, evidence or a report simply dated after the ALJ's decision does not satisfy the good cause requirement.  The claimant must also provide a valid reason for his or her failure to obtain that evidence before the hearing date.  *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d. 964, 966 (6th Cir. 1986).

discharge, he was instructed to use his CPAP mask every night. (Tr. 267.)

On August 7, 2006, Ramos was referred for pain management due to his lower back pain and radiculopathy. (Tr. 281.) Though there appears to be some confusion over whether Ramos was seen by John Nickels, M.D., or certified nurse practitioner Linda Alberino, it is the latter's signature that appears on the treatment notes. (Tr. 285.) *Id*. The impression was lumbar radiculopathy. *Id*. The treatment plan included Vicodin, Flexeril, Ibuprofen, lumbar epidural injections, physical therapy, and an MRI of the lumbar spine. *Id*.

On September 18, 2006, a medical source statement was completed by an unknown individual.[2] (Tr. 146-47.) The statement notes that Ramos was limited to lifting and carrying less than five pounds; standing/walking for two to three hours in an eight hour workday, but only one to two hours without interruption; sitting for two to three hours in an eight hour workday; rarely climbing, balancing, stooping, crouching, kneeling, or crawling; rarely pushing/pulling; and, occasionally reaching. *Id*. The statement also included a number of environmental limitations. *Id*. Finally, it was indicated that Ramos needed a sit-stand option, had severe pain, and had been prescribed a brace and a CPAP mask. *Id*.

On November 10, 2006, Ramos told nurse Alberino that the medications were "helping to manage [the] pain some." (Tr. 286.)

On March 1, 2007, Jason Sustersic, D.O., completed a physical capacity assessment. (Tr. 321-22.) He found that Ramos could lift and/or carry ten pounds frequently, twenty pounds occasionally; had no limitations in standing or walking; and could sit two hours without interruption for a total of four hours in an eight-hour workday. (Tr. 321.) He found Ramos could occasionally stoop, crouch, kneel, and crawl, but could rarely or never climb or balance; frequently reach, handle, feel, perform fine and gross manipulation, but only occasionally push and pull; and, that Ramos should avoid moving machinery. (Tr. 322.) He also noted that Ramos did not require additional rest during an eight-hour workday, but did require a sit/stand option.

---

[2] The signature at the end of the form is illegible, and there is no other indication as to who completed the form. (Tr. 147.)

*Id*.

On April 25, 2007, an MRI performed by radiologist Bradley A. Blackburn, M.D., revealed no significant degenerative disc disease or disc herniation.  (Tr. 355.)  Dr. Blackburn did find modest compression of the thecal sac at the L3, L4 and L5 levels secondary to prominent distribution of epidural fat, as well as annular bulging at the L5 level.  *Id*.  Finally, he noted facet arthropathy with neural foraminal encroachment and associated nerve root impingement at the L4 and L5 levels.  *Id*.

On February 26, 2008, Dr. Susteric provided an updated functional capacity assessment.  (Tr. 338-39.)  He found that Ramos could lift and/or carry ten pounds frequently and twenty pounds occasionally; could stand/walk for one hour without interruption for a total of four hours; and, could sit one hour without interruption for a total of four hours.  (Tr. 338.)  He also found that Ramos could frequently balance; occasionally stoop, kneel, and crawl; rarely or never climb or crouch; frequently reach, handle, feel, and perform fine manipulation; occasionally push/pull and perform gross manipulation; and should avoid moving machinery.  (Tr. 339.)  He believed that Ramos required a sit/stand option, but did not require additional rest during an eight-hour workday.  *Id*.  Dr. Susteric stated that these limitations were caused by degenerative disc disease in the lumbar spine.  (Tr. 338.)

On April 10, 2008, Ramos was evaluated by neurologist Dr. Joseph Hanna.  (Tr. 347-49.)  Ramos indicated that, since his last visit, he had lost twenty pounds and suffered from daily back pain that radiated to the left leg, which was most severe at night.  (Tr. 348.)  Ramos also complained that his leg occasionally collapsed.  *Id*.  Dr. Hanna noted that Ramos had an MRI showing that there was no clear cause.  *Id*.  Dr. Hanna's impression was lumbar degenerative disc disease, predominately lumbosacral facet pain, and some left sciatica.  (Tr. 349.)  He concluded that it was difficult for Ramos to work from a respiratory and musculoskeletal standpoint.  *Id*.

### *Hearing Testimony*

At the hearing, Ramos testified as follows:

- He is about 5'7" tall and weighs about 300 pounds.  (Tr. 25.)

- He suffers from obstructive sleep apnea and regularly uses a CPAP mask, but still falls asleep three to four times a day for a period of fifteen (15) to twenty (20) minutes. (Tr. 27.) He is able to drive, but is afraid to do so as he has "doze[d] off at the wheel." (Tr. 28.)

- He experiences pain in his lower back, which radiates down to his left leg causing numbness. (Tr. 28.) His leg began "collapsing" just a few weeks prior to the hearing, and he started using a cane thereafter. (Tr. 29.) His pain is exacerbated by walking and long periods of sitting or standing. *Id*. In addition to medication, he lays down in bed two to three times daily to try to alleviate his pain. (Tr. 30.)

- He can lift twenty (20) pounds. (Tr. 29-30.)

- Both his hypertension and diabetes are controlled with medication. (Tr. 30-31.)

- He stopped abusing cocaine in May of 2006 and does not drink alcohol. (Tr. 31.)

- He has never received nerve blocks or epidural injections for pain. (Tr. 32.)

- He lives with his wife and three children. (Tr. 33.) He cannot help with household chores due to his back pain, but he helps take care of his six month old child while his wife does chores around the house. *Id*.

- He is able to attend to his personal care and dress himself, though his wife helps him with his socks. (Tr. 33.)

- He does not often associate with friends or neighbors. (Tr. 34.)

The ALJ posed the following hypothetical to the VE:

[T]he hypothetical has the following picture as a younger individual with a high school education with no transferable skills, who can perform the full range of light work. Who can stand or walk one hour without interruption for a total of four hours in an eight hour work day. Who can sit for two hours at a time for a total of six hours in an eight hour work day. Required to alternate positions occasionally with a sit/stand option. Can occasionally crouch or kneel. Cannot climb ladders or scaffolding. Cannot be exposed to dusty environments, gasses, fumes or strong chemicals. Cannot be exposed to extreme cold or heat. And cannot work around dangerous machinery or in high places. Would there be any jobs in the national or regional economy that this person could perform, and if any, what numbers?

(Tr. 34.) The VE testified that the hypothetical individual could not perform Ramos's past relevant work, but there were some light or sedentary unskilled jobs such a person could perform. (Tr. 34-35.) The VE offered the following examples: ticket seller, Dictionary of Occupational Titles ("DOT") § 211.467-030; and, cashier II, DOT § 211.467-010. (Tr. 35.) The VE stated that these positions could be performed with a sit/stand option. *Id*. When asked if such a person would be employable if he required five to seven twenty minute breaks, the VE

responded in the negative. (Tr. 35-36.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Ramos was insured on his alleged disability onset date, April 17, 2006, and remained insured through the date of the ALJ's decision, May 27, 2008. (Tr. 16.) Therefore, in order to be entitled to POD and DIB, Ramos must establish a continuous twelve month period of disability commencing between these two dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Ramos established medically determinable, severe impairments, due to degenerative disc disease, obstructive sleep apnea, asthma, diabetes mellitus type II, and obesity. (Tr. 16.) The ALJ noted that Ramos had also been diagnosed with elevated cholesterol, hypertension, chronic liver disease, and cocaine abuse, but that these impairments were not "severe" under the regulations.[4] (Tr. 16-17.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Ramos was found incapable of performing his past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Ramos is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("A decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v.*

---

[4] The ALJ specifically found that Ramos's cocaine abuse was in remission. (Tr. 17.)

*Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

Ramos claims the ALJ erred by: (1) failing to give appropriate weight to his treating and examining physicians; and, (2) finding that he was not disabled at Step Five of the sequential analysis.

### *Treating and Examining Physicians*

Ramos asserts that Dr. Sustersic, Dr. Hanna, and Dr. Nickels are all treating physicians. (Pl.'s Br. at 10.) Defendant does not contest that Dr. Susteric or Dr. Hanna are treating physicians. (Def.'s Br. at 9-11.) Ramos argues that the ALJ failed to mention Dr. Nickels's treatment records and findings, while effectively rejecting the opinions of Dr. Hanna and Dr. Sustersic despite claiming to give them substantial weight. (Pl.'s Br. at 10.) The Commissioner asserts that the ALJ did indeed address the records that Ramos attributes to Dr. Nickels, but indicates that these records reflect treatment by nurse practitioner Linda Alberino, whom the ALJ misidentified as "Dr. Linda Alleen." (Def.'s Br. at 3, 9-10, *citing* Tr. 19.)

Under Social Security regulations, the opinion of a treating physician is entitled to

controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)); *accord* 20 C.F.R. § 416.927. "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[5]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d

---

[5] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

383, 391 (6th Cir.1984).  According to 20 C.F.R. § 416.927(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Though Ramos argues that the ALJ failed to mention Dr. Nickels's treatment records, as noted in the relevant medical evidence above, nurse practitioner Alberino, who appears to practice at the same office as Dr. Nickels, actually signed the treatment notes that Ramos attributes to Dr. Nickels.  (Tr. 281-86.)  As pointed out by the Commissioner, nurse practitioner Alberino is misidentified as Dr. Linda Alleen by the ALJ, and her opinion was accorded "substantial weight."  (Tr. 19.)  Therefore, it appears that the ALJ gave substantial weight to the records Ramos claims he ignored.

However, according to Ramos, the ALJ's conclusion that the medical evidence supported an RFC for a range of light work is in direct conflict with the actual medical reports.  (Pl.'s Br. at 10.)  With respect to the records signed by nurse practitioner Alberino, Ramos argues that they suggest standing for long periods of time was an aggravating factor, a finding he claims is inconsistent with the ALJ's RFC.  *Id*.  Under the heading "History," the following notation appears: "Aggravating factors – Standing for long Period of time."  (Tr. 281.)  The Commissioner asserts that this "finding" merely records the statement of Ramos himself and, therefore, is not entitled to any special weight.  (Def.'s Br. at 10) (*citing Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 563, 569 (6th Cir. 2009) ("A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule."))  As the statement is found in the medical history portion of the records, the Commissioner's assertion appears to be correct.  Nonetheless, attributing the "finding" to the medical source rather than Ramos causes no inherent inconsistency with the

10

RFC. The ALJ accommodated the inability to stand for a long period of time by limiting Ramos to one-hour of continuous standing, for a total of four hours in a work day, and providing him with a sit/stand option.

As to Dr. Hanna, Ramos appears to argue that the ALJ did not actually accord his opinion substantial weight because the RFC is allegedly inconsistent with Dr. Hanna's statement that it was "difficult [for Ramos] to work from respiratory and [musculoskeletal] standpoint." (Tr. 349.) Ramos fails to explain how Dr. Hanna's statement is inconsistent with the ALJ's finding, as the statement is not the equivalent of a finding that Ramos is unable to work. The RFC includes significant restrictions as well as a sit/stand option. Moreover, even if the Court were to construe Dr. Hanna's statement as an opinion that Ramos is completely unable to work, such opinions need "not be give[n] any special significance" regardless of the source, as the ultimate issue of disability is expressly reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(2)&(3).

Ramos's argument, that not a single physician of record found that he had the capacity to sit for up to six hours in an eight-hour workday in two hour increments also fails. Among Ramos's treating physicians, only Dr. Sustersic offered any opinion as to Ramos's ability to sit during a workday.[6] The other physicians of record simply did not proffer an opinion as to Ramos's maximum capacity to sit. The fact that Dr. Sustersic was the only identifiable physician to offer such an opinion does not thereby compel the ALJ to adopt it. Dr. Sustersic proffered at least two physical RFC assessments, one from March of 2007 and another from February of 2008.[7] (Tr. 321-22; 338-39.) The ALJ believed that Dr. Sustersic's opinion as to Ramos's ability to sit was overly restrictive, as he found that Ramos could sit for longer than the four hours asserted by Dr. Sustersic. (Tr. 19.) Specifically, the ALJ relied on Ramos's own

---

[6] As stated above, the records post-dating the ALJ's decision are irrelevant to this matter.

[7] The ALJ found that the latter opinion superseded both the earlier statement as well as the unknown medical source statement (Exhibit 6E; Tr. 146-47) dated September 18, 2006. (Tr. 19.)

11

testimony wherein he stated that he helped care for his six-month old child, which, he opined, would require more than four hours of sitting. *Id*. Thus, to the extent that the ALJ considered Ramos's statement in not giving significant or controlling weight to Dr. Sustersic's sitting restriction, "such consideration was proper as it directly related to the sitting assessment."[8] *See Hambrick v. Astrue*, 2009 U.S. Dist. LEXIS 26226 (S.D. W. Va. Mar. 30, 2009) (finding that it was not improper for the ALJ to decline to ascribe substantial weight to a physician's opinion as to the claimant's ability to sit, where such opinion was not consistent with claimant's activities).

In addition, Ramos's argument ignores the fact that the RFC is not entirely inconsistent with Dr. Sustersic's opinion. The ALJ found that Ramos could stand and/or walk for four hours (in one-hour increments) in an eight-hour work-day and sit for six hours (in two hour increments) in an eight-hour workday. (Tr. 17.) In addition, the ALJ included a sit/stand option. (Tr. 17-18.) Dr. Susteric, on the other hand, found that Ramos could stand/walk for one hour without interruption for a total of four hours; and, could sit one hour without interruption for a total of four hours. (Tr. 338.) Without question, these RFC's are not identical. Nonetheless, Ramos, within the ALJ's RFC, would not actually be required to sit for more than four hours in any given eight-hour workday because he could stand and/or walk for the other four hours.

As such, Ramos's argument that the ALJ failed to accord proper weight to the opinions of his treating physicians is not well taken.

*Step Five*

Ramos asserts that the ALJ's finding at Step Five of the sequential analysis is not supported by substantial evidence because the VE's testimony was responsive to an inaccurate hypothetical. (Pl.'s Br. at 12-15.)

A hypothetical question must precisely and comprehensively set out every physical and

---

[8] It bears noting that Ramos testified that he falls asleep three to four times daily for fifteen to twenty minutes at a time due to his sleep apnea. (Tr. 27.) In addition, he testified that he lies down approximately two to three time daily in twenty minute increments to help relieve his pain. (Tr. 30.) If this testimony is credited in its entirety, Ramos spends up to two hours and twenty minutes of his day lying down. It can reasonably be inferred that he spends the remainder of his time alternating between sitting, standing, and walking.

12

mental impairment of the applicant that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Ramos argues that the hypothetical was defective, because the ALJ did not include Ramos's actual limitations with respect to sitting, standing, and walking, or his continued problem of falling asleep during the day due to sleep apnea. (Pl.'s Br. at 14.)

Ramos argues that the RFC was inconsistent with his hearing testimony. *Id*. Ramos specifically emphasizes his testimony that: (1) he fell asleep three to four times daily; (2) needed to lay down two to three times daily for twenty minutes at a time; and, (3) both sitting and standing for fifteen to twenty minutes or walking for thirty minutes increased his pain. *Id*. The ALJ's opinion specifically notes these portions of Ramos's testimony, but found that his alleged symptoms were "not credible to the extent they are inconsistent with the [RFC] assessment."[9] (Tr. 18-19.) Ramos's testimony, as it relates to his need to nap during the day, is also inconsistent with Dr. Sustersic's opinion that Ramos did not require additional rest periods during an eight-hour workday. (Tr. 322; 338.) The hypothetical did not expressly incorporate the limitations suggested by Ramos, as the ALJ did not find those limitations credible or supported by the record.

To the extent that Ramos asserts that the hypothetical is inaccurate because it failed to adopt the sitting limitations found by Dr. Sustersic, such an argument merely rehashes his previous claim regarding the rejection of treating physician opinions. An ALJ need not include limitations that were found to be unsupported by the evidence. Therefore, the ALJ did not err by omitting the more restrictive sitting limitation. Ramos has failed to explain how the ALJ's

---

[9] Notably, Ramos has not challenged the propriety of the ALJ's credibility finding.

hypothetical was inconsistent with respect to standing/walking, as the hypothetical actually incorporates the more restrictive standing/walking limitation found in Dr. Sustersic's most recent opinion. (Tr. 338.)

Because the ALJ's hypothetical need only incorporate limitations that he finds to be warranted by the record, Ramos's second assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the defendant

s/ Greg White
United States Magistrate Judge

Date: May 11, 2011

### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**